IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SHANNON GALLAGHER, et. al.,

          Plaintiffs,

v.

COUNTY OF SAN MATEO, et. al.,

          Defendants.

No. C 04-448 SBA

**ORDER**

[Docket No. 14]

This matter comes before the Court on Plaintiff Shannon Gallagher's Motion for Class Certification. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby GRANTS Plaintiff Shannon Gallagher's Motion for Class Certification [Docket No. 14].

## **BACKGROUND**

**A.   Factual Background**

    **1.   Parties**

Plaintiff Shannon Gallagher ("Plaintiff" or "Gallagher"), and all those similarly situated, are California residents who are citizens of the United States and who were allegedly arrested and compelled to comply with strip and/or visual body cavity searches[1] at any and all San Mateo County Jails prior to being arraigned, without the County of San Mateo or its employees first having, and recording in writing, a reasonable suspicion that the searches would produce contraband or weapons. Compl. at ¶¶ 2-9.

---

[1] Pursuant to the California Penal Code, a strip search or visual body cavity search is "a search which requires a person to remove or arrange some or all of his or her clothing so as to permit a visual inspection of the underclothing, breasts, buttocks, or genitalia of such person." Cal. Penal Code § 4030(c).

1  Defendant County of San Mateo Sheriff Don Horsley is the duly elected sheriff of the county
2  of San Mateo responsible for administering the jail facilities and for producing, overseeing, and
3  implementing the policies, practices, and customs relating to the operation of the San Mateo Jail. *Id.*
4  at ¶¶ 10-14.

5  Defendant County of San Mateo is a division of the state of California that allegedly adopted
6  and maintained an official policy or custom or practice that "authorize[d] by its terms the strip/visual
7  body cavity search of any prisoner . . . being placed into the jail population where inmates are assigned
8  to live for twenty-four hours or longer." Pl's Mot. at 5. Defendant San Mateo County Sheriff's
9  Department also allegedly maintained or permitted this policy or custom or practice. *Id.* at ¶ 9.[2]

**2.   Allegations**

On July 10, 2003, a member of the Pacifica Police Department arrested Gallagher in the city of Pacifica, pursuant to a three-year-old San Francisco County traffic warrant for driving on a suspended license. Compl. at ¶¶ 15-18.

At the time of her arrest, however, Gallagher claims that she possessed a valid driver's license, which had been issued to her nine months earlier. *Id.* at ¶¶ 19-21. Gallagher was nonetheless arrested and transported to the Pacifica Police Department where she remained in a holding cell for a short period of time. *Id.* at ¶¶ 20-22.

Subsequently, pursuant to County of San Mateo policy and practice, Gallagher was transported to the McGuire Correctional Facility ("MCF") in downtown Redwood City. Compl. at ¶ 23; Decl. of Mark E. Merin ("Merin Decl.") at Ex. B (Gallagher Depo. at 23:20-26:5) and Ex. C (Trindle Depo. at 20:8-17). While at MCF, Gallagher was allegedly subjected to a strip/visual body cavity search. Compl. at ¶¶ 24-25; Merin Decl. at Ex. B (Gallagher Depo. at 35:14-19).

After remaining at MCF for approximately three hours, Gallagher was allegedly handcuffed and placed in a van to be transported to the San Mateo Women's Correctional Facility ("WCF"). Compl. at ¶¶ 27-28; Merin Decl. at Ex. B (Gallagher Depo. at 45:20-46:12). At WCF, any woman who was admitted to the facility and unable to make bail was subjected to a strip/visual body cavity search before

---

[2] Don Horsley, the County of San Mateo, and the San Mateo County Sheriff's Department are collectively referred to herein as "Defendants."

being released to the general population of the facility. *See* Merin Decl. at Ex. G (Peters Depo. at 12:8-13:1). Accordingly, Gallagher was once again compelled to comply with a strip/visual body cavity search. Compl. at ¶¶ 1-2; Merin Decl. at Ex. B (Gallagher Depo. at 45:20-46:12).

During both of the alleged visual body cavity searches, Gallagher was required to expose her genitalia and other private parts of her anatomy and was then left standing naked for a period of time. *Id.* at ¶¶ 3-5. She remained at WCF for several hours before being released on bail. *Id.* at ¶¶ 6. Although Gallagher received a court date of August 18, 2003, to take place in San Francisco County, the charges against her were subsequently dropped. *Id.* at ¶¶ 7-8.

**B.     Procedural Background**

Gallagher filed an administrative group government tort claim within six months of her arrest, for herself and for all other persons similarly situated. Compl. at ¶¶ 9-13. The group tort claim was denied on or about January 15, 2004. *Id.* On February 3, 2004, Gallagher filed the instant Class Action Complaint ("Complaint"). The Complaint is brought on behalf of Gallagher and all persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure and California Code of Civil Procedure § 382, and is brought against San Mateo County, the San Mateo Sheriff's Department, and San Mateo County Sheriff Don Horsley. The Complaint alleges the following causes of action: (1) violation of the Fourth and Fourteenth Amendments to the United States Constitution, brought pursuant to 42 U.S.C. § 1983; (2) violation of the California Constitution, brought pursuant to California Civil Code §§ 52 and 52.1; (3) violation of California Penal Code § 4030.[3]

Gallagher's Motion for Class Certification was filed on April 22, 2005. Defendants filed an opposition to Gallagher's motion on May 17, 2005.

After receiving Gallagher's Motion for Class Certification, Defendants' Opposition, and Gallagher's Reply Brief, the Court ordered the parties to submit supplemental briefing regarding the start

---

[3] The California legislature enacted California Penal Code § 4030 after discovering that "some present search practices violate state and federal constitutional rights to privacy and freedom from unreasonable searches and seizures." Cal. Penal Code § 4030(a). Accordingly, the statute provides a civil remedy for individuals who were "arbitrarily subjected to unnecessary strip and body cavity searches after arrests for minor misdemeanor and infraction offenses." *Id.* An individual initiating a valid claim alleging violation of Section 4030 may potentially recover actual damages or one thousand dollars, whichever is greater.

3

1  and end dates for each of Gallagher's proposed classes. *See* June 6, 2005 Order.

## **LEGAL STANDARD**

Class certification is governed by Federal Rule of Civil Procedure 23, which sets forth a two-step procedure. First, the Court must determine that the following four requirements of Rule 23(a) have been satisfied: (1) numerosity; (2) common questions of law and fact; (3) typicality; and (4) fair and adequate representation. Fed. R. Civ. P. 23(a). Once these requirements are met, the plaintiff must also show that the lawsuit qualifies for class action status under one of the four possibilities found in Rule 23(b). The plaintiff bears the burden of proving that certification is appropriate. *See Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001).

Of the four criteria set forth in Rule 23(b), in the instant case, Gallagher alleges that Rule 23(b)(3) is applicable. Under Rule 23(b), the Court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b). The matters pertinent to a finding under Rule 23(b)(3) include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action. *Id.*

The Court maintains great discretion in certifying a class action. *Vizena v. Union Pac. R. R. Co.*, 360 F.3d 496, 502 (5th Cir. 2004). The Court must rigorously analyze whether the class action allegations meet the requirements of Rule 23. S*ee General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982). However, "[b]ecause the early resolution of the class certification question requires some degree of speculation . . . all that is required is that the Court form a 'reasonable judgment' on each certification requirement." *In re Citric Acid Antitrust Litig.*, 1996 WL 655791 *2 (N.D. Cal. 1996). "In formulating this judgment, the Court may properly consider both the allegations of the class action complaint and the supplemental evidentiary submissions of the parties." *In re Citric Acid*, 1996 WL 655791 at * 2. The Court may also consider how the plaintiffs' claims will be tried. *Castano v. Am.*

*Tabacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996).

## ANALYSIS

In the instant case, Gallagher seeks an order certifying the following classes pursuant to Rule 23(b)(3):

1. For the federal claim ("Class One"):

> All women who, from February 3, 2002 to December 2, 2003, were arrested on any charge (including felonies) *not* involving weapons, controlled substances, or violence, and *not* involving a violation of parole or a violation of probation (where consent to search is a condition of such probation), *and* who were subjected to a uniform and indiscriminate (blanket) strip/visual body cavity search by defendants before arraignment at the San Mateo County Jail without any individualized reasonable suspicions that they were concealing contraband. This class also includes all female arrestees who were subjected to subsequent blanket strip search before arraignment after the initial strip/visual body cavity search without any reasonable individualized suspicion that they had subsequently acquired and hidden contraband on their persons.

2. For the state law claim ("Class Two")[4]:

> All female arrestees who, from June 12, 2003 to December 2, 2003, were arrested on an infraction or misdemeanor charge and brought to the San Mateo County Jail *and* who were subjected to a uniform and indiscriminate (blanket) strip/visual body cavity search before arraignment without written supervisorial authorization, as required under

---

[4]The Court notes that Gallagher refers to Class One as including both "state" and "federal" claims. There are two state law claims alleged in Gallagher's complaint: (1) claims relating to violations of the California Constitution brought under California Civil Code §§ 52 and 52.1; and (2) claims brought under California Penal Code § 4030. However, Defendants contend that California Civil Code §§ 52 and 52.1 do not provide Gallagher with the right to bring a class action on behalf of other persons. Indeed, Section 52.1 only provides that a plaintiff "may institute and prosecute in his or her own name and on his or her own behalf." Cal. Civ. Code § 52.1. Since Gallagher provides no response to Defendants' argument even though it is her burden to do so, and since Defendants' argument appears to be correct, the Court concludes that the only state law claim that is cognizable as part of the class action litigation is Gallagher's California Penal Code § 4030 claim. Since Gallagher concedes that this claim only affects "Class Two," then "Class One" may recover for Gallagher's federal claim only. The Court's conclusion does not affect Gallagher's right to pursue recovery under California Civil Code §§ 52 and 52.1 individually.

California Penal Code § 4030(f).

Each of the requirements for class certification are addressed below. *See General Telephone Co. of Southwest,* 457 U.S. at 161 (A "class action may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of [Rule 23] have been satisfied.").

**A.     Ascertainability.**

An implied prerequisite to certification is that the classes must be sufficiently defined. *See DeBremaeker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). An identifiable class exists if its members can be ascertained by reference to objective criteria. *See, e.g., id.* at 734-35 (court declined to certify a class made up of Texas residents "active in the peace movement" because identification of members was dependent on their subjective states of mind). Class members need not be ascertained prior to certification, but "the exact membership of the class must be ascertainable at some point in the case." *In re Initial Pub. Offering Sec. Litig.*, 2004 U.S. Dist. LEXIS 20497, at *65-66 (S.D.N.Y. 2004). It must thus be "administratively feasible for a court to determine whether a particular individual is a member" of the class. *Rios v. Marshall*, 100 F.R.D. 395, 403 (S.D.N.Y. 1983). "The Court must be able to make this determination without having to answer numerous fact-intensive questions." *Daniels v. City of New York*, 198 F.R.D. 409, 414 (S.D.N.Y. 2001).

In the instant matter, Gallagher requests that the Court certify two classes, Class One and Class Two, and contends that both classes are sufficiently ascertainable. Specifically, Gallagher notes that the eligibility of a female arrestee for membership in the proposed classes is objective and can be obtained from records and computer data maintained by Defendant San Mateo County. *See* Merin. Decl. at Ex. E (Lunny Depo. at 59:21-60:12) (noting that the jail's computer indicates the charges on which the arrestee is booked and whether the arrestee was housed in a facility before arraignment). Gallagher also notes that, since the strip/body cavity search was indiscriminately applied, there would be no need to scrutinize individual files.[5] Gallagher's arguments are well-supported. Indeed, in a recent case before Judge Breyer, *Bull v. City & County of San Francisco*, C 03-1840, a similarly defined class

---

[5] Gallagher further contends that the number of women who were, in fact, searched on the basis of documented, individualized suspicion will likely be very small and that such women will be excluded from the class.

6

was found to be ascertainable and thus certifiable. Further, as set forth below, since Gallagher has now provided start and end dates for the proposed classes, the Court finds that she has sufficiently satisfied the ascertainability prerequisite to certification.

### 1. Class One

Specifically, Gallagher proposes that Class One shall have a start date of February 3, 2002 and an end date of December 2, 2003. Class One consists of individuals asserting claims under the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. In *Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000), the Ninth Circuit determined that the applicable limitations period for federal civil rights actions is borrowed from the forum state's statute of limitations for personal injury actions. California Code of Civil Procedure § 335.1 provides that the applicable period of limitations is two years. Because February 3, 2002 is approximately two years prior to the date Gallagher initiated her action, Gallagher proposes February 3, 2002 as the start date for Class One. Gallagher proposes an end date of December 2, 2003 because, according to Gallagher, this is the date "when the custom of indiscriminately and uniformly strip searching of female pre-arraignment arrestees was corrected." *Id*. Defendants do not oppose the proposed start or end dates.

### 2. Class Two

Class Two consists of individuals asserting claims under California Penal Code § 4030. In California, prior to maintaining a lawsuit against a public entity, a plaintiff is required to comply with the guidelines set forth in the California Tort Claims Act. Pursuant to California Government Code § 945.4 "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board[.]" Additionally, California Government Code § 911.2 provides that, "[a] claim relating to a cause of action for death or for injury to person or to personal property . . . shall be presented . . . not later than six months after the accrual of the cause of action." Finally, section 945.6 requires, "any suit brought against a public entity on a cause of action for which a claim is required to be presented . . . be commenced, if written notice [rejecting the claim] is given . . . not later than six months after the date such notice is personally delivered or deposited in the mail." Cal. Gov. Code § 945.6.

According to the California Court of Appeals in *Schmidt v. Southern California Rapid Transit Dist.*, 14 Cal. App. 4th 23, 25-26 (1993), "the combined effect of sections 911.2 and 945.6 is that a claim for a personal injury action against a public entity must be presented within six months of the injury; and if the claim is denied, suit must be filed within six months of the date of denial." *Id.*

In her Complaint, Gallagher alleges that she was injured on or about July 10, 2003. She further alleges that she filed a group government tort claim on December 12, 2003. The group tort claim was denied on or about January 4, 2004. Gallagher commenced this class action on February 3, 2004. Gallagher therefore proposes June 12, 2003 as the start date for Class Two, which is six months before her tort claim was filed. Defendants do not oppose June 12, 2003 as the start date. Gallagher also proposes, and Defendants do not oppose, December 2, 2003 as an end date for Class Two.

**B.    Federal Rule 23(a) Requirements.**

**1.    Numerosity**

Rule 23(a)'s first requirement is that the proposed classes must be so numerous that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable" does not mean "impossible," and a plaintiff only need establish the difficulty or inconvenience of joining all members of the class to meet the numerosity requirement. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). There is no set numerical cutoff; a court must examine the specific facts of each case to determine whether numerosity has been satisfied.[6] *General Tel. Co. of the Northwest v. EEOC*, 446 U.S. 318, 329-30 (1980). Moreover, a plaintiff need not allege the exact number of class members, "but may instead [make a reasonable] estimate on the basis of the size of a disputed offering." *Brosious v. Children's Place Retail Stores*, 189 F.R.D. 138, 145 (D.N.J. 1999).

Given the proposed start and end dates for all claims initiated by both Class One and Class Two, Gallagher estimates that Class One may be comprised of at least 2,000 individuals. Defendants, on the

---

[6] Although neither Rule 23(a) nor the courts have imposed an absolute "magic number," some courts have held that numerosity may be *presumed* at a level of forty members. *See, e.g., Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). On the other hand, classes of fifteen or fewer people have frequently been rejected as too small for certification. *See, e.g., General Tel. Co.*, 446 U.S. at 329-30 (fifteen affected employees "would be too small to meet the numerosity requirement"); *Harik v. Cal. Teachers Ass'n*, 298 F.3d 863, 872 (9th Cir. 2002) (certification of classes of seven, nine, and ten members vacated on numerosity grounds).

8

1  other hand, estimate that the number of potential Class One members will not exceed 1,814 women
2  arrestees. For Class Two, Gallagher estimates that membership "is certain to be greater than 200"
3  women. Defendants estimate the number to be approximately 223 women.[7]

4  Regardless of whether the Court accepts Gallagher's estimates or Defendants' estimates, the
5  number of potential class members for both classes is substantial and the Court therefore finds that the
6  numerosity standard is clearly met in this case.

**2.    Commonality**

8  To prevail on her Motion for Certification, Gallagher must also establish that there are "questions
9  of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the Ninth Circuit stated in *Hanlon v.*
10 *Chrysler Corporation*, 150 F.3d 1011, 1019 (9th Cir. 1998), the commonality requirements of Rule
11 23(a) are less rigorous than the companion requirements of Rule 23(b)(3). All questions of fact and law
12 need not be common to satisfy the rule. *Id*. The existence of shared legal issues with divergent factual
13 predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within
14 the class. *Id*. Factual variations or individual differences concerning damages, for example, will
15 generally not defeat commonality. *See, e.g., Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)
16 (differences in individual damage calculation insufficient to defeat commonality).

17 Here, according to Gallagher, "the core common question of law is whether it was legal for the
18 defendants to follow a custom and/or policy of conducting blanket strip searches and visual body cavity
19 searches of all female pre-arraignment arrestees arriving at the Women's Correctional Facility to be
20 housed pending arraignment." Gallagher further argues that given the standardized nature of the policy,
21 "each class member's claim hinges upon this single issue." Defendants, on the other hand, claim that
22 "very few of the issues to be adjudicated are common to the entire class." Instead, Defendants argue
23 that certifying Plaintiffs' proposed classes would be inefficient since the Court would be forced to

---

[7]Gallagher has raised numerous factual objections to the evidence Defendants have submitted regarding numerosity and typicality. However, in a motion for class certification, the Court may consider both the allegations of the complaint and any other "material sufficient to form a reasonable judgment on each requirement" of Rule 23. *See Blackie v. Barrack*, 524 F.2d 891, 900-01 & n.17 (9th Cir. 1975). The materials submitted by Defendants are being considered for this limited purpose only and are not being considered as part of a determination of whether Gallagher's claims have merit. Accordingly, Gallagher's factual objections are OVERRULED.

1  examine each claim on a case-by-case basis to determine whether an officer legitimately possessed an
2  individualized suspicion that a strip search of a specific potential class member would produce
3  contraband.

4  Defendants' arguments are without merit. In an analogous case, *Tardiff v. Knox County*, 365
5  F.3d 1, 4 (1st Cir. 2004), the First Circuit reviewed a district court's grant of class certification for claims
6  challenging the lawfulness of a blanket strip search policy. The defendants in *Tardiff* similarly resisted
7  certification on the basis of two potential complications. *Id.* at 4. The first concern was that the strip
8  searches may have been lawful as to some groups of arrestees and not others. *Id.* The court, however,
9  determined that defendants' concern was alleviated by narrowing the class and excluding individuals
10 who had been arrested for drugs, weapons, or violent felonies, groups for which a strip search would
11 arguably have been appropriately required.[8] *Id.* The second concern noted by the defendants in *Tardiff*
12 was that, even if the potential class were to be narrowed, there might be individuals within the remaining
13 group of arrestees who were lawfully subjected to a strip search provided it was predicated on the basis
14 of individualized, reasonable suspicion. *Id.* The First Circuit rejected this concern as unwarranted,
15 given that the plaintiffs had alleged that the county had a policy of strip searching every arrestee. *Id.*
16 at 5-6.

17 Like the certified class in *Tardiff*, Gallagher alleges a standardized strip/visual body cavity
18 search procedure that was applicable to all female arrestees to be housed at the correctional facility.
19 Since the policy was allegedly applied "across the board," the need to scrutinize individual claims is
20 obviated. Gallagher has accordingly satisfied the commonality requirement.

21 **3.    Typicality**

22 The third requirement of Rule 23(a) is typicality. The typicality requirement focuses on the
23 similarity between the lead plaintiff's legal theories and those of whom he or she purports to represent.
24 *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1998). As such, "[t]he commonality and
25 typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 158 n.13. However,
26 "[t]ypicality refers to the nature of the claim . . . of the class representative, and not to the specific facts

---

[8] Here, there is no need for further modifications, as Plaintiff has already proposed appropriately narrowed classes.

from which it arose or the relief sought." *See, e.g., Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Here, to prove typicality, Gallagher must only establish that she is "part of the class and possess[es] the same interest and suffer[ed] the same injury as the class members." *Id.*; *accord California Rural Legal Assistance, Inc. v. Legal Services Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990). A "representative's claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Defendants present three arguments in support of their position that Gallagher's claims are not typical: (1) Gallagher alleges that she was subjected to not just one – but two – strip searches; (2) potentially, Gallagher claims are against different defendants than the other members of the putative class; (3) Gallagher's injury is not typical of the other putative class members' injuries.

Defendants' first argument is without merit because the mere fact that Gallagher was searched twice does not necessitate a finding that her claims are not typical. It is Gallagher's second search at the WCF that makes her claim typical of the claims asserted by the rest of the members of the classes. *See Hanlon*, 150 F.3d at 1020 (claims are typical if they are reasonably co-extensive with those of absent class members and need not be substantially identical); *see also Tardiff v. Knox County*, 218 F.R.D. 332, 337 (D. Me. 2003) ("Although there may be class members who were searched more than once and an individualized examination of the impact of the searches on specific class members may be necessary, the potential for differing amounts of recovery does not automatically preclude class certification.").

Defendants' second argument is equally unpersuasive. Relying on *La Mar v. H&B Novelty & Loan Company*, 489 F.2d 461, 465 (9th Cir. 1973) as authority, Defendants argue that Gallagher, who has asserted causes of action against the County and Sheriff Horsley, cannot satisfy the typicality requirement since she cannot maintain a cause of action against other individual defendant officers who were not directly responsible for her injuries. *La Mar* is inapposite, however. In *La Mar*, the plaintiff had filed suit against "all the pawn brokers licensed to conduct business under the laws of Oregon." *Id.* at 462. Accordingly, the defendants in *La Mar* were a diverse group of private parties and entities, not employees of the same employer who were acting pursuant to the same policy and practice. Further Defendants overlook the fact that the *La Mar* court expressly carved out an exception for "situations in

1 which all injuries are the result of a conspiracy or concerted schemes between the defendants at whose
2 hands the class suffered injury" and "instances in which all defendants are juridically related in a manner
3 that suggest a single resolution of the dispute would be expeditious." *Id.* at 466. Additionally, in the
4 present suit, the named defendants are all currently persons or entities alleged to be directly responsible
5 for Gallagher's purported injuries. Accordingly, *La Mar* does not support a finding that class
6 certification is inappropriate here.

7 Finally, Defendants' argument regarding the difference between Gallagher's potential injuries
8 and other potential injuries recoverable by the class is misplaced. Significantly, Defendants admit that
9 Plaintiff is seeking emotional distress damages and statutory penalties, which damages are typical for
10 the putative classes, and do not refute that the injuries suffered by Plaintiff giving rise to such damages
11 are also typical of the class. Additionally, "[t]ypicality refers to the nature of the claim . . . of the class
12 representative, and not to the specific facts from which it arose *or the relief sought*." *See, e.g., Hanon,*
13 976 F.2d at 508.

14 In sum, none of Defendants' three arguments is availing. Gallagher was allegedly strip searched
15 pursuant to a blanket policy, custom and/or practice of San Mateo County. Like Gallagher's claims, all
16 of the putative class members' claims hinge on the constitutionality of that same policy, custom, and/or
17 practice. Accordingly, Gallagher has satisfied the typicality requirement.

18 **4.  Adequacy of Representation**

19 The final requirement of Rule 23(a) is that Gallagher must be able to "fairly and adequately
20 protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation assures due
21 process of law to all unnamed class members; if a person is to be conclusively bound by a judgment
22 prosecuted by a representative, he must have received adequate representation. *Hansberry v. Lee*, 311
23 U.S. 32, 42-43 (1940). To establish adequacy of representation, Gallagher must show: (1) that her
24 interests are common with, and not antagonistic to, the classes' interests; and (2) that she is "able to
25 prosecute the action vigorously through qualified counsel." *Lerwill v. Inflight Motion Pictures, Inc.*,
26 582 F.2d 507, 512 (9th Cir. 1978).

27 Here, Gallagher has produced ample evidence that she would be an adequate representative of
28 the proposed classes. As set forth above, Gallagher's interests coincide with the classes' interests.

Further, the declarations of Gallagher's counsel demonstrate that they have sufficient experience and expertise to represent the proposed classes. *See* Merin Decl. at ¶¶ 11-16; Decl. of Andy Schwartz ("Schwartz Decl.") at ¶¶ 5-10. Further, Defendants' challenge to the adequacy of Gallagher's representation on the grounds that other members of the class may be subject to an exhaustion of administrative remedies defense under the Prison Litigation Reform Act ("PLRA") is unpersuasive. First, Defendants have not produced any evidence that any potential class member was in custody at the time of the filing of the Complaint. Moreover, as Gallagher points out, the PLRA is not applicable to situations such as the instant proposed class action litigation. *See, e.g., Jones 'El v. Berge*, 172 F. Supp.2d 1128, 1131-1134 (W.D. Wisc. 2001).

### C.     Rule 23(b)(3) Requirements

Finally, before the classes can be certified, Gallagher must also show that at least one of the three requirements of Rule 23(b) is satisfied. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 614-15 (1997). Here, Gallagher requests that the Court certify Class One and Class Two pursuant to Rule 23(b)(3) because common questions predominate and class resolution is superior to other available methods for the fair and efficient adjudication of the controversy.

The objective behind the two requirements of Rule 23(b)(3) is the promotion of economy and efficiency in actions that primarily involve monetary damages. *See* Fed. R. Civ. P. 23(b)(3) (advisory committee notes). When common issues predominate, true economy may be achieved through the class action device, as time, effort and expense can be saved as compared to individual suits, and the confusion over differing outcomes can be avoided. *Id*.

Here, the substantive issue common to the class is Defendants' alleged liability for the County's strip search policy or practice, and the primary question to be resolved is whether Defendants' policy, custom, and/or practice of implementing blanket strip searches on all female arrestees to be housed in Defendants' correctional facilities violated certain federal constitutional rights and state statutory rights. The facts common to all proposed plaintiffs include being arrested for an offense not involving drugs, weapons, or a felony charge of violence or for a misdemeanor, being booked at the McGuire Correctional Facility, being transferred to the San Mateo Women's Correctional Facility for housing, and being subjected to a strip or body cavity search. This combination of facts and law collaboratively

1 operate to determine Defendants' liability for adopting, maintaining and implementing the blanket strip
2 search policies.

3 To resist certification under Federal Rule 12(3)(b), Defendants again raise the argument that the
4 Court would be required to consider particularized facts concerning each search on a case-by-case basis,
5 and that the Court would first need to determine whether a particular officer conducted the strip search
6 based on individualized reasonable suspicion. Defendants' argument, however, is undermined
7 considerably by the fact that Defendants' own witnesses have admitted that no such individualized
8 determinations were made. *See* Merin Decl. at Ex. G (Peters Depo. at 12:8-25, 12:19-24). Further,
9 Defendants' argument that class certification is not appropriate because the Court would need to analyze
10 "particularized facts concerning each search" has already been considered, and rejected, by other courts
11 as unpersuasive. *See Tardiff,* 365 F.3d at 13; *Doe v. Calumet City, Ill.*, 754 F.Supp. 1211, 1221 n.23
12 (N.D. Ill. 1990).

13 While Defendants also argue that this Court should not certify this case as a class action because
14 the Court may have to "conduct a particularized assessment of damages for each putative class
15 member," class certification is not defeated merely because individualized damage issues may remain.
16 *See Smilo v. South Western Bell Mobil Systems*, 323 F.3d 32, 40 (1st Cir. 2003) ("Where . . . common
17 questions predominate regarding liability, then courts generally find the predominance requirement to
18 be satisfied even if individual damages issues remain."). Indeed, once liability issues have been
19 determined, there are various methods available in a class action lawsuit that the Court may effectively
20 use to resolve the various resulting damages issues.

21 In conclusion, it is clear to the Court that, in the instant case, a class action is far superior to
22 multiple individual lawsuits. The needless expenditure of additional time, effort and expense that would
23 be attendant to numerous individual suits is greatly reduced, and the potential for differing outcomes
24 is avoided as well. As such, Gallagher has satisfied the criteria of Rule 23(a) and 23(b)(3), and class
25 certification is appropriate.
26 ///
27 ///
28 **<u>CONCLUSION</u>**

IT IS HEREBY ORDERED THAT Gallagher's Motion for Class Certification [Docket No. 14] is GRANTED. The certified classes are hereby defined as follows:

1. For the federal claim ("Class One"):

    All women who, from February 3, 2002 to December 2, 2003, were arrested on any charge (including felonies) *not* involving weapons, controlled substances, or violence, and *not* involving a violation of parole or a violation of probation (where consent to search is a condition of such probation), *and* who were subjected to a uniform and indiscriminate (blanket) strip/visual body cavity search by defendants before arraignment at the San Mateo County Jail without any individualized reasonable suspicions that they were concealing contraband. This class also includes all female arrestees who were subjected to subsequent blanket strip search before arraignment after the initial strip/visual body cavity search without any reasonable individualized suspicion that they had subsequently acquired and hidden contraband on their persons.

2. For the state law claim ("Class Two"):

    All female arrestees who, from June 12, 2003 to December 2, 2003, were arrested on an infraction or misdemeanor charge and brought to the San Mateo County Jail *and* who were subjected to a uniform and indiscriminate (blanket) strip/visual body cavity search before arraignment without written supervisorial authorization, as required under California Penal Code § 4030(f).

IT IS FURTHER ORDERED THAT notice shall be given to the members of the classes by publication in a newspaper of general circulation, twice weekly for two weeks within sixty (60) days of the date of this Order, with costs of such notice to be paid by Plaintiff. Plaintiff shall file with the Court her proposed notice of pendency of class action for the Court's approval within twenty (20) days of the date of this Order.

IT IS FURTHER ORDERED THAT the November 29, 2005 Pretrial Conference and the December 5, 2005 trial date are VACATED.

IT IS FURTHER ORDERED THAT the parties shall appear for a telephonic Case Management

1  Conference on **Wednesday, January 11, 2006 at 3:15 p.m.**  The parties shall **meet and confer** prior
2  to the conference and shall prepare a joint Case Management Conference Statement which shall be filed
3  no later than ten (10) days prior to the Case Management Conference.  Plaintiff shall be responsible for
4  filing the statement as well as for arranging the conference call.  All parties shall be on the line and shall
5  call (510) 637-3559 at the above indicated date and time.
6      IT IS SO ORDERED.

8  Dated: 10/28/05     SAUNDRA BROWN ARMSTRONG
                       United States District Judge